## IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION
## AT JACKSON
_____

|  |  |  |
|---|---|---|
| **GORDON BURKS,** | ) | Shelby Law No. 45888 T.D. |
|  | ) |  |
| Plaintiff/Appellant. | ) |  |
|  | ) |  |
| VS. | ) | C. A. No. 02A01-9411-CV-00254 |
|  | ) |  |
| **BELZ-WILSON PROPERTIES, ( a** | ) |  |
| **joint venture, comprised of BELZ** | ) |  |
| **INVESTMENT COMPANY, SPENCE** | ) |  |
| **L. WILSON, ROBERT A. WILSON,** | ) |  |
| **KEMMONS WILSON, JR., CAROLE** | ) |  |
| **A. WILSON-WEST and DOROTHY** | ) |  |
| **W. E. MOORE), BELZ INVESTMENT** | ) |  |
| **COMPANY, INC., a corporation** | ) |  |
| **BELZ INVESTMENT COMPANY,** | ) |  |
| **a partnership comprised of PHILLIP** | ) |  |
| **BELZ, JACK A. BELZ and KEMMONS** | ) |  |
| **WILSON; WIMBLETON** | ) |  |
| **GYMNASTICS, INC., a corporation,** | ) |  |
| **and PRIDE CONSTRUCTION** | ) |  |
| **COMPANY, INC.,** | ) |  |
|  | ) |  |
| Defendants/Appellees. | ) |  |
|  | ) |  |

FILED

January 2, 1996

Cecil Crowson, Jr.
Appellate Court Clerk

_____

From the Circuit Court of Shelby County at Memphis.
**Honorable James M. Tharpe, Judge**


**Mark Ledbetter**, Memphis, Tennessee
**Dan T. Bing**, Memphis, Tennessee
Attorneys for Plaintiff/Appellant.


**Joe D. Spicer**,
**Marc O. Dedman**,
SPICER, FLYNN & RUDSTROM, Memphis, Tennessee
Attorney for Defendant/Appellee Pride Construction Company, Inc.


OPINION FILED:

**AFFIRMED**


**FARMER, J.**


**CRAWFORD, P.J., W.S.** : (Concurs)
**HIGHERS, J.** : (Concurs)

Appellant, Gordon Burks, (Burks) brought this negligence action against Appellee, Pride Construction Company, Inc., (Pride) and various other defendants, in the Circuit Court of Shelby County. Pride's motion for summary judgment was granted and, from that judgment, Burks appeals.

On May 4, 1991, Burks was seriously injured when he attempted to perform a gymnastics maneuver from a pommel horse into a gymnastics pit at the Wimbleton Sportsplex in Memphis. Burks filed suit against (1) Belz-Wilson Properties, owner of the Wimbleton Sportsplex; (2) the individual members of Belz-Wilson Properties; (3) Wimbleton Gymnastics, Inc., the lessee of the premises; and (4) Pride, the contractor which constructed the gymnastics pit.

In his complaint, Burks alleged that he was injured due to the defendants' negligence in failing (1) to warn users of dangers incident to the use of a gymnastics rail and pit at the premises (2) to properly design, construct and maintain a safe premises; and (3) to provide a gymnastics pit with adequate shock absorption or depth to prevent the serious injuries sustained by Burks.

Pride filed a motion for summary judgment, supported by the affidavits of William R. Eades, the President of Archeon, Inc., Robert A. Wilson, an owner of the Wimbleton Sportsplex, and Ronald Stage, the President of Pride. The affidavits filed by Pride contained the following undisputed assertions: Robert A. Wilson, a representative owner of the Wimbleton Sportsplex, retained Archeon, an architectural firm, to draw plans for the gymnastics pit at the Wimbleton Sportsplex. The dimensions of the pit were provided by the Wimbleton Gymnastics, Inc., the lessee of the premises. Pride did not design or participate in preparing the plans that were drawn. Pride's work was in strict compliance with the plans and specifications provided and was accepted by the owners of the premises after completion. Pride had no knowledge of the owners' actual use of the pit, and had no knowledge that foam cubicles would later be placed in the pit.

In response to Pride's motion for summary judgment, Burks filed *inter alia* the affidavit of Dr. Gerald S. George, Ph.D. In his affidavit, Dr. George, an author of several articles dealing with gymnastics safety and the design and construction of gymnastics facilities, stated that any entity constructing the gymnastics pit at the Wimbleton Sportsplex should have known that said

pit was creating a hazard because its depth was insufficient to assure a user safety in gymnastics maneuvers where substantial height would be involved. Dr. George further alleged that the dimensions of the pit deviated from the 1985 and 1990 standards of construction found in the *U.S.G.F. Gymnastics Safety Manual for In-Ground Pits*, Ch. 5, § 3, p.56-57 (1985) and p.51 (1990).

Because the trial court issued no findings of fact, we are unaware of its reasoning for granting summary judgment. We begin our own analysis of the instant case by noting that a trial court should grant a motion for summary judgment only if the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. T.R.C.P. 56.03; *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Dunn v. Hackett*, 833 S.W.2d 78, 80 (Tenn. App. 1992). The party moving for summary judgment bears the burden of demonstrating that no genuine issues of material fact exist. *Byrd*, 847 S.W.2d at 210. When a motion for summary judgment is made, the court must consider the motion in the same manner as a motion for directed verdict made at the close of the plaintiff's proof; that is, the "court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Id*. at 210-11. In *Byrd*, the Tennessee Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. (Citations omitted.) In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

*Id.* at 211 (emphasis in original).

On the record before us, it is undisputed that Pride built the gymnastics pit in strict compliance with the specifications drawn by Archeon and initially provided by Wimbleton Sportsplex. It is further undisputed that the completed gymnastics pit deviated from the recommendations of the *U.S.G.F. Gymnastics Safety Manual for In-Ground Pits*, Ch. 5, § 3, p.56-57 (1985) and p.51 (1990). However, it is also undisputed that Pride did not know of the ultimate

use of the gymnastics pit and did not play any part in the placement of foam pads in the pit.

Considering the evidence in a light most favorable to Burks, we are left to determine whether Pride was entitled to summary judgment as a matter of law. *Byrd*, 847 S.W.2d at 210-11. Under the law in this state, no claim for negligence can succeed in the absence of any one of the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal cause. *Haynes v. Hamilton County*, 883 S.W.2d 606, 611 (Tenn. 1994); *Perez v. McConkey*, 872 S.W.2d 897, 905 (Tenn. 1994); *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993); *McClenahan v. Cooley*, 806 S.W.2d 767, 774 (Tenn. 1991).

Accordingly, the threshold question in the instant case is whether, on the facts contained in the record before us, there was any duty owed by Pride to Burks in regard to the construction of the gymnastics pit. Whether there is a duty owed by one person to another is a question of law to be decided by the court. *Dooley v. Everett*, 805 S.W.2d 380, 384 (Tenn. App. 1990); *Kelley v. Johnson*, 796 S.W.2d 155, 157 (Tenn. App. 1990). Since our inquiry involves purely a question of law, no presumption of correctness attaches to the trial court's judgment. *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995); *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn. 1991).

The existence of a duty is for the court to decide based on evidence and mixed considerations of logic, common sense and public policy. *See Allen v. Baggett*, 905 S.W.2d 190, 191 (Tenn. App. 1995). A statement of the underlying principle regarding the imposition of a duty of care upon a party can be found in *Lindsey v. Miami Development Corp.*, 689 S.W.2d 856 (Tenn. 1985):

> [U]pon the facts in evidence, such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of others--or, more simply, whether the interest of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant. This is entirely a question of law, to be determined by reference to the body of statutes, rules, principles and precedents which make up the law; and it must be determined only by the court....

*Lindsey*, 689 S.W.2d at 858-59 (quoting *W. Page Keeton, et al., Prosser and Keeton on the Law of Torts*, § 37, at 236 (5th ed. 1984)).

*Johnson v. Oman Const. Co.*, 519 S.W.2d 782 (Tenn. 1975) is instructive in respect to the duty owed by Pride to Burks. In *Johnson*, the Tennessee Supreme Court abandoned the "accepted work" doctrine and adopted the modern view that a contractor has a duty to exercise a standard of reasonable care for the protection of third parties who may foreseeably be endangered by its negligence, even after acceptance of the work by the contractee. *Johnson*, 519 S.W.2d at 788.

*Johnson* involved a wrongful death claim by parents against two municipalities and a contractor for the improper placement and illumination of a highway guard rail. *Id.* at 784. As in the present case, the contractor satisfactorily and correctly performed its work according to the contract documents and specifications. *Id.* at 787.

Relying on the accepted work doctrine, the contractor filed a motion for summary judgment. In support of its motion, the contractor filed an affidavit, stating that the work performed was done pursuant to the terms of its contract and that the work had been inspected and accepted by the Tennessee Highway Department and the Federal Highway Administration upon completion. *Id.* The trial court granted the contractor's motion, and the court of appeals affirmed. *Id.* at 784.

Upon review, the Tennessee Supreme Court explained that the previous law in Tennessee had been that "an independent contractor is not liable for injuries occurring to a third person after the contractor has completed the work and it has been accepted by the owner or the employer." *Id.* at 788. The Court recognized, however, that a growing number of jurisdictions had adopted the modern view that a contractor should be held to the standard of reasonable care for the protection of third parties who may foreseeably be endangered by his negligence, even after acceptance of the work by the contractee. *Id.* at 788. Consequently, the Court held:

> [I]f an independent contractor is guilty of negligence in performing
> his work in such a way that it could reasonably be foreseen that the
> owner or third parties would probably sustain personal injury or
> property damage as a result of the negligent condition, then the

independent contractor should not, as a matter of law, be discharged merely because his work has been accepted and delivered to the owner.

*Id*. Applying this principle to the facts before it, the court reversed the grant of summary judgment and remanded the case to trial. *Id.* at 789.

Pursuant to *Johnson*, we hold that Pride had a duty to use reasonable care under the circumstances not to engage in conduct that would foreseeably cause injury to others. *See Pittman v. Upjohn Co.*, 890 S.W.2d 425, 428 (Tenn. 1994); *Nichols v. Atnip*, 844 S.W.2d 655, 661 (Tenn. App.) (Tenn. 1992) and *McCall v. Wilder*, ____ S.W.2d ____ (Tenn. 1995). We are faced then with the question of whether the record before us contains facts sufficient to infer a breach of that duty. Typically, the scope of a party's duty and the breach thereof are questions for the trier of fact. *Dooley*, 805 S.W.2d at 384. These questions become questions of law when the facts and inferences drawn from the facts permit reasonable persons to reach only one conclusion. *Kelly*, 796 S.W.2d at 157.

Here, the record reveals that Pride was not aware of the ultimate use of the pit. Thus, we believe that we are faced with a different situation than that faced by the *Johnson* court. In *Johnson*, the facts showed that a unmarked guardrail had been installed to barricade a street that had been in use prior to the construction of the barricade. *Id*. at 784. There was also evidence presented that inferentially showed that the contractor knew that the guardrail was dangerous to motorists. *Id.* at 787. Consequently, reasonable minds could have differed as to whether the hazard created could have been reasonably foreseeable to the contractor who constructed the barricade. Therefore, summary judgment was not proper.

Being unaware of the use for which the pit was constructed, the plaintiff's injury was not reasonably foreseeable to Pride. Moreover, there is no allegation or proof that the gymnastics pit was in the same condition on the date of the accident as it was when completed. Instead, the affidavits filed by Pride contain the undisputed allegations that Pride did not know of the actual use of the pit when the pit was delivered nor did Pride know that foam padding would later be added to the pit.

We conclude that, under these circumstances, Pride did not breach any duty owed to Burks. To find that such a breach existed would require this Court to draw several factual inferences not supported by the record. Consequently, we hold that the trial court properly granted summary judgment in favor of Pride.

The judgment of the trial court is affirmed. Costs on appeal are taxed to Appellant for which execution may issue if necessary.

_____
FARMER, J.

_____
CRAWFORD, P.J., W.S. (Concurs)

_____
HIGHERS, J. (Concurs)